**STATE of Delaware**

v.

**Christopher TOTH.**

**Cr.A.Nos. IN97–04–0085, IN97–04–0086.**

Superior Court of Delaware,
New Castle County.

Aug. 28, 2000.

---

**6.** *Compare with Messick v. Star Enterprise,* Del.Super., C.A. No.: 93C–03–14, Carpenter, J. 1998 WL 110082 (Jan. 30, 1998) (Mem. Op.).

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Christopher M. Toth, pro se.

QUILLEN, J.

Mr. Toth was convicted by a jury on February 13, 1998 of two charges: arson in the second degree and possession of a molotov cocktail and/or an incendiary device. Mr. Toth was sentenced on April 17, 1998, and his convictions were affirmed on direct appeal by the Supreme Court on February 4, 1999. *Toth v. State*, Del. Supr., No. 202,1998, Walsh, J., 1999 WL 66556 (Feb. 4, 1999) (ORDER). Mr. Toth is currently serving six years at Level 5 on the arson charge which is to be followed by 4 years Level 5 suspended for one year Level 4, and 3 years Level 3 on the incendiary device charge.

Mr. Toth filed a *pro se* Motion for Post Conviction Relief and a Memorandum in support of the Motion on July 10, 2000.[1] The heart of Mr. Toth's Motion is that the indictment on the arson charge did not allege an essential element of the offense, damage to a building (in this case a 1996 Pontiac). After reviewing Mr. Toth's Motion and opposing and reply memoranda, this Court held oral argument.

 Mr. Toth argues that Superior Court Criminal Rule 7(c) requires an in-

dictment to be a plain, concise and definite written statement of the essential facts constituting the offense charged. Mr. Toth claims that not having an essential element of the crime contained in the indictment violates the mandate of that Rule and also violates provisions of the United States and Delaware Constitutions. Finally, Mr. Toth states that the jury instructions constructively amended Count I of the indictment which broadened the grounds for conviction which appeared in the indictment.[2]

 An indictment performs essentially two functions: to put the accused on full notice of what he is called upon to defend, and to effectively preclude subsequent prosecution for the same offense. *Malloy v. State*, Del.Supr., 462 A.2d 1088, 1092 (1983). An indictment should be drafted with such particularity that an accused is fully informed of the charge against him, will be given a reasonable opportunity to prepare his defense, and will be shielded against future prosecution for the same offense. *Pepe v. State*, Del. Supr., 3 Storey 417, 171 A.2d 216, 218 (1961), *cert. denied*, 368 U.S. 31, 82 S.Ct. 145, 7 L.Ed.2d 90 (1961) (citing cases). The indictment in this case states:

> ARSON IN THE SECOND DEGREE in violation of Title 11, Section 802, of the Delaware Code of 1974, as amende [sic].

---

1. On July 13, 2000, Mr. Toth also filed a Motion for Appointment of Counsel which has been denied by this Court. *State v. Toth*, Del.Super., IN 97–04–0085 & 0086, Quillen, J. (July 19, 2000).

2. Beyond this, and almost as an afterthought, Mr. Toth also alleges a host of reasons why his counsel at trial was ineffective. In order to establish a claim for ineffective assistance of counsel, Mr. Toth must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the

deficiencies in counsel's representation caused Mr. Toth actual prejudice. *Dawson v. State*, Del.Supr., 673 A.2d 1186, 1196 (1996), *cert. denied*, 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996). It appears that none of the laundry list of claims against his former attorney creates any concrete allegation of actual prejudice. *See id.* Furthermore, from what Mr. Toth has presented, it does not appear that his counsel's performance fell below an objective standard of reasonableness on the additional charges.

CHRISTOPHER TOTH, on or about the 22nd day of February, 1997, in the County of New Castle, State of Delaware, did intentionally start a fire, intending to damage a building, and [sic] a 1996 Pontiac, located in the 2300 block of Wynwood Road, Wilmington, Delaware.

In the specification portion of the indictment, it is clear that an element of the crime, damage, was omitted. It is equally clear that in the jury charge given, the element of damage was charged. *See* Jury Charge in *State v. Toth*, Feb. 13, 1998, Quillen, J., at 8–9.

The Delaware Supreme Court has addressed the question of whether an omission of a necessary element of a crime is a fatal flaw in an indictment. In *Malloy*, the Defendant was convicted of intent to deliver hashish and argued to the Supreme Court that Rule 7(c) requires the indictment to contain essential facts constituting the offense charged. *Malloy*, 462 A.2d at 1092–93. Because the indictment did not contain an allegation as to the intent element of the statute, Malloy argued that his conviction was defective. *Id.*

The Supreme Court held that *Malloy* did not contend prior to trial that the indictment was ambiguous. *Id.* Additionally, the Court noted that the indictment in *Malloy*, as here, contained the official citation to the crime charged. *Id.* Ultimately, the Supreme Court held that the indictment was sufficient to give Malloy notice of the offense and allegations of the State, which allowed him to prepare his defense. *Id.*

Malloy also argued that under Article I Section 8 of the State Constitution, he was entitled to a determination by the grand jury that there were sufficient facts to believe an offense was committed, and that he was the perpetrator. *Id.* Because of the defect in the indictment, Malloy ar-

gued that the Grand Jury did not have sufficient information to indict him. In addressing the State Constitutional arguments, the Court opined that there is a strong presumption that the Grand Jury had faithfully performed its duty in returning an indictment, and the Defendant bears a heavy burden of overcoming that presumption. *Id.* at 1094. *See also*, 1 Charles Alan Wright, *Federal Practice and Procedure* § 111 (3d ed.1999). The Supreme Court dismissed the constitutional claim by holding that "merely pointing to an omission probably caused by prosecutorial negligence, does not satisfy that burden." *Id.*

■ In other cases, the Supreme Court and this Court have held that where an indictment has not satisfied the requirements of Superior Court Criminal Rule 7(c), such an error was not so prejudicial as to deprive the Defendant of a fair trial. *Jean v. State*, Del.Supr., No. 150,1987, Horsey, J., 1988 WL 12255 (Feb. 3, 1988); *State v. Husser*, Del.Super., No. 90005314, Babiarz, J., 1990 WL 161226 (Oct. 12, 1990) (holding that an indictment for a statutory offense is generally held sufficient if the offense is charged in substantially the words of the statute or equivalent language); *see also*, *State v. DiMaio*, Del.Super., 5 Storey 177, 185 A.2d 269, 271 (1962). Thus, the Delaware Courts have made it clear that a less than perfectly drafted indictment is constitutionally sufficient if it imparts adequate notice to a Defendant. *State v. Murray*, Del.Super., No. 87–01–0586 R1, Babiarz, J., 1992 WL 240409 (Sept. 4, 1992), *aff'd*, Del.Supr., 622 A.2d 1096 (1993).

■ In this case, while there technically was a defect in the indictment, that is not enough to reverse Mr. Toth's conviction or give him an inadequate assistance of counsel claim. First, "the introduction

of the indictment contained the official citation to the statute and the name of the offense," (i.e. Arson in the Second Degree in violation of Title 11 Section 802 of the Delaware Code); this fact is deemed to be of some importance in Delaware. *Malloy*, 462 A.2d at 1094. Furthermore, the objection concerning the indictment was not raised before trial or at trial.[3] The mere defect in this indictment of not including the damage element for arson is not enough to quash the indictment following trial.[4] The Defendant was put on notice of the charges against him. The case was tried with a clear understanding that there was damage to the car. *See State v. Jean*, Del.Super., CR.A. S86–07–1125, Chandler, J., 1987 WL 6466 (Jan. 20, 1987), *aff'd*, Del.Supr., 538 A.2d 1113 (1988). Even if Mr. Toth's counsel would have objected to the technical defect before trial, Mr. Toth could have been kept in prison until the defect was cured. *See* Super. Ct.Crim. R 12(h).

Furthermore, as noted in *Malloy*, prosecutorial negligence, as was demonstrated

here, does not show that the Grand Jury did not faithfully perform its function. Indeed, it is impossible to make any judgment about the happening of this case without noting the damage to the car. There is no possibility of prejudice at any stage to Mr. Toth on the facts of this case. While the indictment was technically insufficient, such a defect does not amount to a cognizable claim for ineffective assistance of counsel. The defect in the indictment was not so prejudicial as to deprive Mr. Toth of a fair trial. Therefore, Mr. Toth's Motion for Post–Conviction Relief is DENIED. IT IS SO ORDERED.[5]

The Court would like to remind the State of what the Supreme Court, speaking with the customary precision of Justice Moore, said back in 1983 concerning the drafting of indictments.

> Though Criminal Rule 7(c) eliminates many of the complex common law requirements for preparing an indictment, good and careful draftsmanship is still important. . . . It is clear beyond peradventure that Count II, though sufficient

---

3. Where a Defendant's ground for quashing an indictment is a defect therein, it is necessary that the Defendant make the motion before trial and failure to do so constitutes a waiver of his right to do so. Super. Ct.Crim. R. 12(f); *Sudler v. State*, Del.Supr., No. 310,-1998, Walsh, J., 1989 WL 88606 (June 14, 1989); *Mumford v. State*, Del.Supr., 2 Storey 48, 144 A.2d 150, 155 (1958). Common sense dictates that a readily correctable defect should not control post conviction proceedings if there is no substantial possibility of prejudice.

4. An indictment can be amended as to matters of form but not substance, so long as no new, additional or different charge is made thereby and if the accused will not otherwise suffer prejudice to substantial rights. *See Johnson v. State*, Del.Supr., 711 A.2d 18, 21 (1998); *Harley v. State*, Del.Supr., 534 A.2d 255, 256 (1987); *Keller v. State*, Del.Supr., 425 A.2d 152, 155 (1981); *State v. Blendt*, Del.Super., 120 A.2d 321, 324 (1956). This

case is different than *Johnson v. State*, Del. Supr., 711 A.2d 18, 26–29 (1998). In *Johnson*, there was a variance in the allegation as to the weapon used, a matter related to the crucial evidence being contested. Here, like *Malloy*, there was the mere omission of a general damage allegation, which is inherent in the charge and the undisputed facts, and the omission could not have been prejudicial.

5. In *Jean*, then Judge Chandler artfully noted:

> I do not believe the courts of this State should not be hospitable toward technical claims of invalidity of an indictment first raised after trial absent a clear showing of substantial prejudice to the accused—such as a showing that the indictment is so obviously defective that it cannot, by any reasonable construction, be said to charge the offense for which conviction was had.
> *See State v. Jean*, Del.Super., Cr.A. S86–07–1125, Chandler, J., 1987 WL 6466 (Jan. 20, 1987), *aff'd*, Del.Supr., 538 A.2d 1113 (1988).

to charge an offense, was inartfully drawn. When undertaking to draft an indictment, counsel for the State should turn to the statute defining the crime, and, with the words of the General Assembly before him, write a count that does not omit allegations of an essential element of the offense. Failure to do so is negligence which saves little time in the preparation of an indictment, but requires the needless expenditure of time and effort by counsel, the parties, and the courts. A few moments dedicated to comparing the specification of Count 2, as written here, to the statute would have avoided this controversy entirely.

At oral argument, counsel for the State advised us that the practice of drawing indictments varies across the State. This seemingly inconsistent approach to a crucial step in the criminal justice system, especially in light of the waste of legal resources that occurs when an indictment must be dismissed because of sloppy drafting, should not continue. The Court strongly commends to the Attorney General a review of the internal practices and procedures employed in the preparation of indictments and informations, with particular attention to quality and uniformity of draftsmanship. *Malloy,* 462 A.2d at 1094.

Drafting of indictments and informations continues to be a problem. The Court appreciates and itself suffers from the problem of volume, but defects in the indictment in this case could have been easily cured if the drafters had taken the time to draft the indictment carefully by stating the essential elements of the crime charged. The Department of Justice should be more expert than the Court in indictment drafting skills and yet we frequently get mistakes such as the one in this case and such obtuse charges as con-

spiracy to commit attempted murder. The solution seems simple. If there was an expert draftsperson in the Attorney General's office assigned to review all the indictments before presentment to the Grand Jury, weeding out error, technical or substantive, the problem here and others like it could easily be avoided and the resources of the Court and the Attorney General's office would be saved in the long haul. It is time for corrective action.